### 21525. LANIER *v*. BANK OF PORTAL.

DECIDED SEPTEMBER 17, 1931.

*Anderson & Trapnell,* for plaintiff in error.
*Hinton Booth, Kirkland & Kirkland,* contra.

LUKE, J. An execution in favor of Bank of Portal against James A. Lanier, based upon a judgment rendered May 19, 1926, was levied upon a certain bale of cotton and twenty acres of cotton and ten acres of corn in the field. It appears from the entry of levy, dated September 18, 1926, that said property was "levied on as the property of James A. Lanier and in his possession." On the day the levy was made, Mrs. Lula Lanier, the wife of James A. Lanier, filed her claim to the property. After claimant and plaintiff in fi. fa. had both introduced evidence, the court directed a verdict finding the property subject to the execution. The exception is to the judgment overruling claimant's motion for a new trial, containing the general and three special grounds. The last ground, complaining of the direction of the verdict, presents the main question in the case.

Mrs. Lula Lanier testified, in substance, that the property

claimed was grown on the sixty-eight acre tract of land on which she was born and had lived practically all her life and then lived; that said place was bought from her mother's estate at an administrator's sale, with $1,000 which she got from said estate and $2,000 gotten from a loan company; that her husband had land of his own, and the crops grown on his land were his, and those grown on her land were hers; that "me and my children worked in making and gathering the crops grown on my land, and my husband helped us and showed us how and when to work;" that witness never recognized crops grown on her land as the property of her husband; that her husband's work in connection with said crops was for her; that she did not rent her land to her husband in 1926 or make any agreement with him whereby said crops were to be subject to his debts; and that the guano used on her land was paid for out of the proceeds of crops grown thereon, but that she could not say that the guano used in 1925 and 1926 had ever been paid for. On cross-examination the claimant swore: "I did not recognize the crops grown on my land as my husband's crops. I did not buy any of the fertilizer used in 1926. I know some was used. I did not direct the working of the crops on my land. If he gave a mortgage for fertilizer over the crops on my land in 1925, I did not know it. I did not consent for him to give a mortgage over crops on my land. He did not consult me about it." On re-direct examination the claimant testified that she knew that the cotton and corn levied on were hers; that if her husband agreed to give a mortgage on her crops in 1926, it was without her knowledge, permission, or consent; and that she had never acquiesced in her husband's handling the crops grown on her land as his property.

James A. Lanier testified that the cotton and corn levied on were his wife's property and that he had no interest in it; that said produce was grown on her land in 1926; that he bought the sixty-eight-acre tract of land on which they lived and on which said crops were grown, at a sale held by the administrator of his wife's mother's estate, with $1,000 she got from said estate and $2,000 gotten from a loan company; that he was solvent when he conveyed said land to his wife in 1924, and was solvent thereafter; and that he had no agreement or trade with his wife whereby the crops grown on her land in 1926 were to be his. On cross-examination this witness testified: "I helped to work the crops grown on my wife's

place in 1926. I generally looked after the work in gathering the crops on her land. She and the children worked also in the crops. I hauled most of the cotton to the gin. I did not sell cotton grown on her land as my cotton. . . All the guano that I bought in 1926 was used on my wife's place. I did not plant any cotton on my land in 1926. . . I put that bale of cotton in the warehouse in my wife's name, because it was her cotton. The crop mortgage dated May 22, 1925, given by me to the Southern Phosphate and Fertilizer Co., . . was given by me to secure a fertilizer bill in 1925. The one hundred and thirteen acres of land therein described includes the R. H. Rogers place, forty-five acres, and the home place where we live, sixty-eight acres. My wife did not agree for me to give a mortgage over the crops on her land in 1925. I did not consult her about it. I had three other tracts of land after conveying the sixty-eight acre tract to my wife in 1924 —the R. H. Rogers tract of forty-five acres, and two tracts over on the creek, of one hundred and seventy-six acres. . . I do not know what they were worth. I was solvent after deeding the sixty-eight acres to my wife. I had . . mules, wagons, cows, hogs, and other property that there was nothing against. I sold the ninety-acre tract over the creek to Mr. Forehand. I don't remember what I got for it. The loan company now owns the eighty-six-acre tract. It was sold some time last year. Mr. J. J. Collins now owns the Rogers tract of forty-five acres. It was sold under a deed that he held, . . some time the first of last year. I agreed to give a crop mortgage in 1926, but nothing was ever said about what crops the mortgage should cover. I never did give one. Mr. Brannen didn't ask me for it." On re-direct examination Lanier swore: "All my work in helping gather the crops grown on my wife's place in the year 1926 was for her."

A warranty deed made by James A. Lanier to Mrs. Lula Lanier, dated March 8, 1924, and recorded, . . was offered in evidence by the claimant, and was admitted without objection.

J. S. Brannen, sworn for the plaintiff, testified, in substance, that his company, Southern States Phosphate and Fertilizer Company, had been selling to James A. Lanier for about twenty years; that witness took a crop mortgage from him in 1925; that said mortgage secured a 1925 sale and a balance carried over from 1924; and that when witness sold Lanier fertilizer in 1926 it was agreed that

he should give a crop mortgage, but that witness neglected to take one. On cross-examination Brannen testified, that Mrs. Lanier never said or did anything to lead him to believe that the crops grown on her land belonged to her husband; that all witness's dealings were with Mr. Lanier, and he never talked to Mrs. Lanier about the matter; that in 1924 he would have considered James A. Lanier solvent, "even after he conveyed the sixty-eight acres of land to his wife."

The record of the crop mortgage made by James A. Lanier to Southern States Phosphate and Fertilizer Company and dated May 22, 1925, was offered in evidence by the plaintiff in fi. fa., and was admitted over claimant's objections. For the purposes of this decision, the nature and contents of the deed and crop mortgage referred to are sufficiently indicated by the foregoing.

We do not think that it appears from the evidence in this case, with all reasonable deductions and inferences therefrom, that the verdict complained of was demanded. Therefore we hold that the trial judge erred in directing the verdict. In principle, we think that the conclusion here reached is supported by the two following cases: *Dollar* v. *Busha*, 124 *Ga.* 521 (52 S. E. 615), and *Jenkins* v. *Best Trading Co.*, 39 *Ga. App.* 214 (146 S. E. 512). See also *Sams* v. *Thompson Hiles Co.*, 110 *Ga.* 648 (36 S. E. 104); *Richler* v. *Virginia-Carolina Chemical Co.*, 1 *Ga. App.* 344 (57 S. E. 939).

Under the peculiar facts of this case, we do not think that the trial judge committed reversible error in admitting in evidence the crop mortgage hereinbefore mentioned. Therefore we hold that the first ground of the amendment to the motion for a new trial is without merit.

The only other special ground will not be considered, for the reason that it is not complete within itself and can not be intelligently determined without reference to the brief of evidence. See *Deal* v. *Montgomery*, 31 *Ga. App.* 20 (3) (120 S. E. 26).

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*